OPINION OF THE COURT
Wesley, J.
In Matter of Legum v Goldin (55 NY2d 104), this Court held that payments to the City of New York pursuant to section 1127 of the City Charter are premised on a contract between the City and certain of its nonresident employees. These related appeals now ask us to determine whether this section applies to nonresidents of the City who, as a result of a merger, were transferred from a public benefit corporation or authority to City agencies. We conclude that section 1127 does not apply and therefore reverse the orders of the Appellate Division.
Petitioners in Ganley* are former members of the New York City Transit Authority and Housing Authority Police Departments who reside outside the City of New York and were involuntarily transferred to the New York City Police Department via mergers in April 1995 (see, Nickels v New York City Hous. Auth., 208 AD2d 203, affd 85 NY2d 917). Prior to the mergers, petitioners were not City employees. Therefore, they were not subject to section 1127 of the Charter (formerly section 820), which requires nonresident City employees, as a precondition *214 to employment, to agree to make payments in lieu of personal income taxes to the City in an amount that is computed and determined as if they were City residents.
Petitioners in Hill are Emergency Medical Services personnel formerly associated with the New York City Health and Hospitals Corporation (HHC). These employees were transferred to the New York City Fire Department in March 1996 pursuant to an amendment of section 487 of the City Charter. They too, reside outside the City. Although Corporation Counsel in 1973 opined that section 820 of the City Charter applied to HHC employees because it was a City agency for purposes of this section, HHC did not enforce the section until 1982. Over the ensuing years HHC changed its policy, ultimately determining in 1989 that section 1127 applied to only those EMS employees hired on or after November 1, 1982 who were nonresidents on their date of hire or who later moved out of the City. Petitioners were hired by HHC between January 4, 1973 (the effective date of section 1127) and November 1, 1982 and therefore were specifically exempted from the statute.
The City executed Memoranda of Understanding regarding the mergers, which preserved certain rights, titles and privileges of petitioners’ former positions. Additionally the City sent, and all petitioners received, the following notice:
“Your acceptance of employment with the City of New York * * * upon transfer * * * shall constitute your agreement, pursuant to section 1127 of the New York City Charter, that if you are or become a nonresident of the City at any time during your City employment, you will pay to the City the equivalent of the personal income tax that you would owe if you were a City resident. This notice does not apply to you if you have been continuously employed by the [New York City Transit Authority] [New York City Housing Authority] [Health and Hospitals Corporation] from January 4, 1973 to the date of your transfer.”
Petitioners objected to the City’s proposed imposition of the nonresident payments in a number of ways. Petitioners in Ganley, for example, ran a full-page advertisement in a newspaper that protested their loss of the nonresident exemption. Additionally counsel for the Transit Police Department wrote a letter to Corporation Counsel protesting loss of the exemption. In Hill petitioners filed an improper practice charge with the *215 New York City Office of Collective Bargaining, which alleged that by applying section 1127 to petitioners, the City improperly imposed a new condition of employment without the union’s agreement. Despite these protestations, the City began deducting the payments from petitioners’ paychecks.
Petitioners in Ganley sought a declaration that section 1127 is unconstitutional as applied to them, and related injunctive and monetary relief, including a refund of all amounts that the City withheld from their paychecks, together with interest, costs, disbursements and attorneys’ fees. Supreme Court dismissed the petition and complaint. The court determined that because the employees were notified of the section yet nonetheless accepted employment with the City, they confirmed their agreement to abide by the provisions of section 1127 (Matter of Ganley v Giuliani, 171 Misc 2d 654, supra). The Appellate Division modified by issuing a declaration against petitioners, and as so modified, affirmed. The Court held that since petitioners voluntarily entered into City employment after receiving notice of the transfer and the deductions, they implicitly accepted all the terms of the transfer (Matter of Ganley v Giuliani, 253 AD2d 579).
Petitioners in Hill also sought declaratory and injunctive relief, along with reimbursement of all moneys deducted due to enforcement of section 1127. Supreme Court enjoined enforcement of this section and directed the City to reimburse petitioners for the deductions. The court distinguished the trial court decision in Ganley and carved out an exemption for this particular class of nonresident City employees on the ground that petitioners were previously accorded exempt status by HHC (Matter of Hill v City of New York, 172 Misc 2d 327, 332). The Appellate Division reversed, relying on its decision in Matter of Ganley (supra) (Matter of Hill v City of New York, 253 AD2d 580).
In both cases, the Appellate Division certified to this Court the question whether its orders were proper. We reverse both orders, hold that petitioners are exempt from section 1127 and do not answer the questions certified as the orders appealed from are final (see, CPLR 5713).
Section 1127 of the City Charter provides:
“Condition precedent to employment.
“a. Notwithstanding the provision of any local law, rule or regulation to the contrary, every person seek *216 ing employment with the city of New York or any of its agencies regardless of civil service classification or status shall sign an agreement as a condition precedent to such employment to the effect that if such person is or becomes a nonresident individual as that term is defined in section 11-1706 of the administrative code of the city of New York or any similar provision of such code, during employment by the city, such person will pay to the city an amount by which a city personal income tax on residents computed and determined as if such person were a resident individual, as defined in such section, during such employment, exceeds the amount of any city earnings tax and city personal income tax imposed on such person for the same taxable period” (emphasis added).
The statute was intended to equalize the take-home pay of City employees, both resident and nonresident, and encourages those who work for the City to live in the City (see, 2 Proceedings of Council of City of NY, Dec. 13, 1972, at 1543; Korenyi v Department of Sanitation, 699 F Supp 388, 397-398).
The City contends that the section applies to all nonresident City employees regardless of how they became employed. Furthermore, according to the City, petitioners were notified that, as City employees, they are subject to the section as a precondition of employment. The City argues that upon commencing City employment and cashing their paychecks, petitioners impliedly accepted the City’s employment conditions.
We disagree. Section 1127 envisions a voluntary, preemployment contract between a new employee and the City (Matter of Legum v Goldin, 55 NY2d 104, supra). Pursuant to this provision, new employees who do not reside in the City of New York agree by contract to pay an amount to the City of New York equal to a City resident’s City income tax liability {id., at 108). Signing the agreement is a condition precedent to employment (2 Proceedings of Council of City of NY, op. cit). Indeed, the statute explicitly applies to “every person seeking employment with the city.” (Emphasis added.)
Here, none of petitioners entered into a pre-employment contract for section 1127 deductions. To the contrary, these employees, who had tenured civil service status at their previous agencies, were involuntarily transferred to different departments under the City’s aegis. Petitioners did not seek City *217 employment; nor did they sign an agreement with the City. Rather the City unilaterally merged them into its workforce. The City therefore cannot impose the nonresident deductions upon them. Moreover it is clear that petitioners, long-serving civil service employees, had few options available to them once informed of the transfer. To suggest that they were required to quit their employment to protect their rights ignores the obvious.
The City also argues that petitioners waived any right to challenge the imposition of this section when they cashed their paychecks and continued to work. Petitioners, however, protested the City’s unilateral deductions in several ways, clearly illustrating that they did not acquiesce in the transfers (see, General Motors Acceptance Corp. v Clifton-Fine Cent. School Dist., 85 NY2d 232, 236).
Accordingly, in Ganley and in Lieutenants’, the order of the Appellate Division should be reversed, with costs, and the cases remitted to Supreme Court for further proceedings in accordance with this opinion. The certified question should not be answered upon the ground that it is unnecessary.
In Hill, the order of the Appellate Division should be reversed, with costs, and the order and judgment of Supreme Court reinstated. The certified question should not be answered upon the ground that it is unnecessary.
Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Rosenblatt concur.
In Matter of Ganley v Giuliani: Order reversed, with costs, and action and proceeding each remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein. Certified question not answered upon the ground that it is unnecessary.
In Matter of Hill v City of New York: Order reversed, with costs, and order and judgment of Supreme Court, New York County, reinstated. Certified question not answered upon the ground that it is unnecessary.

 A declaratory judgment action seeking similar relief also was commenced by the Lieutenants’ Benevolent Association of the City of New York, the authorized collective bargaining unit for Transit Authority and Housing Authority lieutenants. Supreme Court issued one decision covering both actions following an agreement by all counsel that the issues were precisely the same in both cases (Matter of Ganley v Giuliani, 171 Misc 2d 654, 656).